UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RICHARD NEIBERGER, et al.,          )
                                                        )
                        Plaintiffs,          )
                                                        )
            v.                                         )          Case No. 1:18-CV-00254-MW-GRJ
                                                        )
DEUTSCHE BANK AG,                      )
                                                        )
                        Defendant.          )


## DEFENDANT'S MOTION TO TRANSFER VENUE TO THE EASTERN OR SOUTHERN DISTRICT OF NEW YORK AND MEMORANDUM OF LAW

## Table of Contents

INTRODUCTION .................................................................................................. 1

BACKGROUND .................................................................................................. 2

    I.    Plaintiffs' Allegations ................................................................... 2

    II.    The Similar Cases Pending in the Eastern District of New York ........ 5

    III.    The Similar Cases Pending in the Southern District of New York ................................................................................................. 7

    IV.    No Similar Cases Are Pending Anywhere Except New York ............. 8

ARGUMENT ...................................................................................................... 10

    I.    Transfer To New York, Which Plaintiffs Recognize Is A Convenient Forum for Their ATA Claims, Would Be in the Interest of Justice .............................................................................. 11

        A.    The Interest of Justice Weighs Strongly in Favor of Transfer Based on the Highly Similar Cases Pending in New York and Deutsche Bank's Presence in New York ........ 12

        B.    This Case Has Strong Ties to New York but Only Minimal Ties to Florida ..................................................... 17

        C.    Plaintiffs' Choice of Venue Should Be Afforded No Deference ........................................................................... 21

    II.    Venue Is Proper in New York ..................................................... 23

CONCLUSION ................................................................................................... 25

## Table of Authorities

**Page(s)**

**Cases**

*Amaya v. Victoria's Secret Stores, LLC,*
   No. 08-81367-Civ-RYSKAMP/VITUNAC, 2009 WL 10667492
   (S.D. Fla. Aug. 3, 2009) ................................................................. 13, 17

*Cain v. Twitter, Inc.,*
   17 Civ. 122 (PAC), 2017 WL 1489220 (S.D.N.Y. Apr. 25, 2017) ....... 12, 22, 25

*Carucel Invs., L.P. v. Novatel Wireless, Inc.,*
   157 F. Supp. 3d 1219, 1229 (S.D. Fla. 2016) ...................................... 16

*Chicken Kitchen USA, LLC v. Tyson Foods, Inc.,*
   No. 17-21503-CIV-WILLIAMS, 2017 WL 6760811 (S.D. Fla.
   Oct. 4, 2017) ........................................................................................ 12

*Clifton v. Florida. Bow Thrusters, Inc.,*
   No. 5:10–cv–8/RS/EMT, 2010 WL 11507724 (N.D. Fla. Mar. 17,
   2010) ..................................................................................................... 23

*Cont'l Grain Co. v. The FBL-585,*
   364 U.S. 19 (1960) ............................................................................ 2, 12

*Cozumel Leasing, LLC v. Int'l Jets, Inc.,*
   No. 5:10–cv–8/RS/EMT, 2016 WL 397615 (M.D. Fla. Feb. 2,
   2016) ..................................................................................................... 25

*Deep v. XAC, LLC,*
   No. 07-8-C, 2007 WL 1308356 (W.D. Ky. May 2, 2007) ..................... 23

*Freeman v. HSBC Holdings PLC,*
   14 CV 6601 (DLI) (CLP), 2018 WL 3616845 (E.D.N.Y. July 27,
   2018) ....................................................................................................... 6

*Hamel-Schwulst v. Negrotto,*
   No. 308cv529/MCR/EMT, 2010 WL 548318 (N.D. Fla. Feb. 11,
   2010) ..................................................................................................... 13

*Hoffman v. Medquist, Inc.*,
No. 1:04-CV-3452-WSD, 2005 WL 3095713 (N.D. Ga. Nov. 16,
2005) ...........................................................................................................13

*Jones Real Estate, Inc. v Avatel Techs., Inc.*,
No. 17-23933-CIV-O'SULLIVAN, 2018 WL 1121537 (S.D. Fla.
Mar. 1, 2018)..............................................................................................21

*Kemper v. Deutsche Bank AG*,
911 F.3d 383 (7th Cir. 2018) ................................................................4, 9

*Manuel v. Convergys Corp.*,
430 F.3d 1132 (11th Cir. 2005) ..................................................................11

*Martin v. Scottrade, Inc.*,
No.: 8:17–cv–1042 T–24 AAS, 2017 WL 6624136 (M.D. Fla. Dec.
28, 2017) ............................................................................................... 13, 21

*Martin v. South Carolina Bank*,
811 F. Supp. 679 (M.D. Ga. 1992) ..............................................................23

*Martinez v. Deutsche Bank AG*,
No. 16-1207-DRH, 2017 WL 1366048 (S.D. Ill. Apr. 12, 2017) ......... 10, 18, 22

*Martinez v. Shulkin*,
No. 1:17cv128-MW/CAS, 2017 WL 10821303 (N.D. Fla. Aug. 2,
2017) ...........................................................................................................21

*Motorola Mobility, Inc. v. Microsoft Corp.*,
804 F. Supp. 2d 1271 (S.D. Fla. 2011) .................................................. 16, 21

*O'Sullivan v. Deutsche Bank AG*,
17 Civ. 8709 (LTS) (GWG), 2018 WL 1989585 (S.D.N.Y. Apr.
26, 2018) ......................................................................................................8

*Raffa v. Wachovia Corp.*,
242 F. Supp. 2d 1223 (M.D. Fla. 2002)......................................................15

*S. Mills, Inc. v. Nunes*,
586 F. App'x 702 (11th Cir. 2014) ..............................................................14

*Saleem v. Centurion of Florida., LLC,*
No. 4:18cv473-MW/CJK, 2018 WL 6046188 (N.D. Fla. Nov. 19,
2018) ..................................................................................................................13

*Shaffer v. Deutsche Bank AG,*
No. 16-CR-497-MJR-SCW, 2017 WL 8786497 (S.D. Ill. Dec. 7,
2017) ....................................................................................................................9

*Southards v. ConAgra Foods, Inc.,*
No. C 07-05355 JF, 2008 WL 108899 (N.D. Cal. Jan. 8, 2008) ......................23

*Stewart Org., Inc. v. Ricoh Corp.,*
487 U.S. 22 (1988) ............................................................................................11

*Thermal Techs., Inc. v. Dade Servs. Corp.,*
282 F. Supp. 2d 1373 (S.D. Fla. 2003) ....................................................... 20, 23

*In re Vicor Corp.,*
493 F. App'x 59 (Fed. Cir. 2012) .....................................................................13

*In re World Wide Med. Tech. LLC,*
Nos. 4:11–cv–614/RS–CAS, 4:12cv170/RS-CAS, 12 Civ. 170,
2012 WL 1252423 (N.D. Fla. Apr. 13, 2012) ............................................ 11, 20

*Wultz v. Islamic Republic of Iran,*
762 F. Supp. 2d 18 (D.D.C. 2011) ....................................................................24

**Statutes and Rules**

12 C.F.R. § 261.2(c)(1) ...........................................................................................15

12 C.F.R. § 261.22(e) ..............................................................................................15

18 U.S.C. § 2333 ........................................................................................................1

18 U.S.C. § 2333(a) ........................................................................................ *passim*

18 U.S.C. § 2333(d) ..................................................................................... 4, 6, 8, 15

18 U.S.C. § 2334(a) .................................................................................................24

28 U.S.C. § 1404(a) ........................................................................................ *passim*

N.Y. Banking Law § 36(10) ....................................................................................15

Defendant Deutsche Bank AG ("Deutsche Bank") hereby moves the Court, pursuant to 28 U.S.C. § 1404(a), to transfer venue to the Eastern District of New York, or in the alternative to the Southern District of New York.

## INTRODUCTION

This case is one of many actions brought against Western financial institutions asserting claims under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, in connection with tragic battlefield deaths or injuries sustained by U.S. service members in Iraq. All of these cases are pending in federal court in New York. Indeed, remarkably, on the same day Plaintiffs filed this action, the *exact same Plaintiffs* filed an identical case in the Eastern District of New York against ten other financial institution defendants raising *the very same claims*. *Stephens v. HSBC Holdings PLC*, No. 1:18-cv-07439-RJD-CLP (E.D.N.Y.). Rather than join Deutsche Bank with these ten other defendants in a single action, Plaintiffs split their claims between two courts in different districts and circuits.

Plaintiffs are entitled to sympathy for their tragic losses. But there is no legitimate reason to file essentially the same action in two different courts separated by more than 1,000 miles. New York was the logical place for all of Plaintiffs' claims to be filed, given that the only relevant U.S.-based conduct that Plaintiffs allege occurred there and because of the multiple similar actions already pending there. None of the events alleged in the Complaint have any connection

whatsoever to Florida.  The only explanations for filing this lawsuit in the Northern

District of Florida are forum-shopping and gamesmanship, a strategy to gain two

bites at the apple.

This Court need not and should not condone this tactic.  Plaintiffs by their

actions have acknowledged that New York is an appropriate forum.  The factors

traditionally considered by courts under 28 U.S.C. § 1404(a) strongly support

transfer.  If Plaintiffs are permitted to press the same claims simultaneously in New

York and Florida, it would encourage the "wastefulness of time, energy and money

that [Section] 1404(a) was designed to prevent."  *Cont'l Grain Co. v. The FBL-*

*585*, 364 U.S. 19, 26 (1960).  Transfer should be granted.

## BACKGROUND

### I.    Plaintiffs' Allegations

Plaintiffs are 23 family members and two estates of four U.S. Army soldiers

who were tragically killed in Iraq.  *See* Compl. ¶¶ 11-60.  They allege that Sgt.

Blake Stephens, Cpl. Joshua Reeves, Spc. Christopher Neiberger, and Spc. Steven

A. Davis were killed in attacks perpetrated by the Jaysh al-Mahdi militia in Iraq.

*Id.* ¶¶ 12, 25, 39, 51.  Plaintiffs reside all across the country:  four Plaintiffs reside

in Idaho, *id.* ¶¶ 16-18, 21; two in California, *id.* ¶¶ 19-20; two in Tennessee, *id.*

¶¶ 29-30; four in Georgia, *id.* ¶¶ 31-33, 35; four in Florida, *id.* ¶¶ 34, 43-45; two in

Virginia, *id.* ¶¶ 46, 59; one in Washington, D.C., *id.* ¶ 47; and four in North

Carolina, *id.* ¶¶ 55-58.

Plaintiffs' claims are premised on Deutsche Bank's supposed participation in

a conspiracy with, among others, Iran and Iranian banks to evade U.S. economic

sanctions that broadly restricted activities involving Iran. *See id.* ¶¶ 1, 77, 150.

Plaintiffs allege that Deutsche Bank provided U.S. dollar-denominated

correspondent banking services to state-controlled Iranian financial institutions and

other customers who were subject to U.S. sanctions. *See id.* ¶¶ 172, 183, 235, 249,

254, 257, 267. In processing transactions for these customers, Plaintiffs allege that

Deutsche Bank employees removed or omitted identifying information before

routing the wire transfers through Deutsche Bank's New York Branch, Deutsche

Bank's New York-based subsidiary, Deutsche Bank Trust Company Americas

("DBTCA"), and other U.S. correspondent banks, thereby shielding the transfers

from U.S. government scrutiny. *See id.* ¶¶ 74, 193, 195, 205-33.

Plaintiffs' allegations regarding Deutsche Bank draw heavily on a consent

order that Deutsche Bank entered into with the New York State Department of

Financial Services in November 2015, in which Deutsche Bank admitted to not

maintaining accurate books and records. *See* Compl. Ex. A. The consent order

concerned "non-transparent methods and practices" that Deutsche Bank used in

processing U.S. dollar clearing transactions on behalf of Libyan, Syrian, Sudanese,

Burmese, and Iranian financial institutions and others from 1999 through 2006.

*See id.* at 2.  But, as one court recently noted, "the consent order does not state or

suggest that any of the transactions Deutsche Bank processed were used to fund

terrorism." *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 388 (7th Cir. 2018).

Separate from Plaintiffs' allegations relating to Deutsche Bank, Plaintiffs

allege that the Iranian government sponsors terrorists using U.S. dollars. *See*

Compl. ¶¶ 4, 75-78, 133.  According to Plaintiffs, Iran sent U.S. dollars to the

Islamic Revolutionary Guard Corp's "Qods Force" and Hezbollah, who in turn

provided support, including weapons and training, to Iraqi groups that targeted

U.S. forces during the Iraq War. *See id.* ¶¶ 108, 120, 197, 200, 201.  Plaintiffs do

not allege that Deutsche Bank transacted with the Jaysh al-Mahdi militia that

allegedly perpetrated the attacks at issue here (or any other Iraqi groups), or that

any of the funds that Deutsche Bank transferred were used to fund any such

groups.

Based on their allegations, Plaintiffs assert three claims under the ATA.

Two claims are for primary liability under 18 U.S.C. § 2333(a), based on a theory

that Deutsche Bank itself allegedly committed acts of international terrorism. *Id.*

¶¶ 268-303.  The third claim is for secondary liability under 18 U.S.C. § 2333(d),

on a theory that Deutsche Bank aided and abetted, by knowingly providing

substantial assistance to, a perpetrator of an act of international terrorism.  *Id.*
¶¶ 304-321.

## II.   The Similar Cases Pending in the Eastern District of New York

Plaintiffs' Complaint against Deutsche Bank is a duplicate of the *Stephens*
complaint filed in the Eastern District of New York by the same Plaintiffs.  In that
case, Plaintiffs allege that ten other financial institutions – HSBC Holdings PLC,
HSBC Bank PLC, HSBC Bank Middle East Limited, HSBC Bank USA, N.A.,
Barclays Bank PLC, Standard Chartered Bank, Royal Bank of Scotland, N.V.,
Credit Suisse AG, Bank Saderat PLC, and Commerzbank AG – are responsible for
the same injuries that this action attributes to the conduct of Deutsche Bank.  *See*
Declaration of Laena St-Jules ("St-Jules Decl.") Ex. A (Compl., *Stephens v. HSBC*
*Holdings PLC*, No. 1:18-cv-07439-RJD-CLP (E.D.N.Y. Dec. 28, 2018), ECF No.
1 ("*Stephens* Compl.")).  As here, the Western financial institution defendants in
*Stephens* are alleged to have processed transactions on behalf of Iranian entities in
a non-transparent manner to evade U.S. sanctions.  *Compare* Compl. ¶¶ 172, 193,
206-07 *with Stephens* Compl. ¶¶ 6, 11, 12, 34.  As here, Plaintiffs claim in
*Stephens* that this enabled Iran to increase the amount of support it provided to
groups targeting U.S. service members in Iraq.  *Compare* Compl. ¶¶ 164, 171, 174,
181 *with Stephens* Compl. ¶¶ 10, 51-55, 177.  And as here, Plaintiffs in *Stephens*
assert (1) primary liability claims under § 2333(a) and (2) an aiding-and-abetting

claim under § 2333(d).  *Compare* Compl. ¶¶ 268-321 *with Stephens* Compl.

¶ 1217-55, 1359-77.  Plaintiffs recently stipulated that the *Stephens* action should

be stayed, "in the interest of efficiency and judicial economy," pending a decision

on a motion to dismiss in another similar ATA action in the Eastern District of

New York.  *See* St-Jules Decl. Ex. B (Stipulation & Order, *Stephens v. HSBC*

*Holdings PLC*, No. 1:18-cv-07439-RJD-CLP (E.D.N.Y. Feb. 13, 2019), ECF No.

7).

Plaintiffs' action in *Stephens* joins four other substantially similar ATA

actions brought by over 2,000 plaintiffs in the Eastern District of New York:

*Freeman v. HSBC Holdings PLC*, No. 1:14-cv-06601-DLI-CLP (E.D.N.Y. Nov.

10, 2014) ("*Freeman I*"); *Freeman v. HSBC Holdings PLC*, No. 1:18-cv-07359-

DLI-CLP (E.D.N.Y. Dec. 26, 2018) ("*Freeman II*"); *Donaldson v. HSBC Holdings*

*PLC*, No. 1:18-cv-07442-LDH-JO (E.D.N.Y. Dec. 28, 2018); and *Tavera v. HSBC*

*Bank USA, N.A.*, No. 1:18-cv-07312-LDH-SJB (E.D.N.Y. Dec. 21, 2018).[1]

Deutsche Bank is a defendant in two of these actions, *Donaldson* and *Tavera*.  The

---

[1] *Freeman II, Donaldson*, and *Tavera* were all filed within a week of this action
and *Stephens*.  *Freeman I* was filed in 2014, but discovery has been stayed, and the
case has not progressed past the motion to dismiss stage.  Last year, the magistrate
judge in *Freeman I* issued a Report and Recommendation ("R&R") recommending
denial of the defendants' motions to dismiss.  *See Freeman v. HSBC Holdings*
*PLC*, 14 CV 6601 (DLI) (CLP), 2018 WL 3616845 (E.D.N.Y. July 27, 2018).  The
*Freeman I* defendants have filed objections based on a number of significant legal
errors in the R&R, and their objections remain pending.  *See* Objections, *Freeman*
*v. HSBC Holdings PLC*, 1:14-cv-06601-DLI-CLP (E.D.N.Y. Aug. 31, 2018), ECF
Nos. 173, 174.

defendants in *Stephens* are also defendants in all four other pending actions in the Eastern District of New York.

## III.   The Similar Cases Pending in the Southern District of New York

Plaintiffs' allegations and claims also overlap with the allegations and claims brought by 211 plaintiffs in two related actions filed in the Southern District of New York in connection with 55 attacks: *O'Sullivan I* and *O'Sullivan II*.[2] The *O'Sullivan* plaintiffs have sued (among others) Deutsche Bank and all of the defendants in *Stephens*, without splitting defendants between different cases as Plaintiffs have done here. As here, the *O'Sullivan* plaintiffs allege that Deutsche Bank and the other Western financial institution defendants processed transactions on behalf of Iranian entities in a non-transparent manner to evade U.S. sanctions. *Compare* Compl. ¶ 172, 193, 206-07 *with* St-Jules Decl. Ex. C ¶¶ 43, 47, 48, 67, 1413 (Compl., *O'Sullivan v. Deutsche Bank AG*, No. 1:17-cv-08709-LTS-GWG (S.D.N.Y. Nov. 9, 2017), ECF No. 1 ("*O'Sullivan I* Compl.")). As here, the *O'Sullivan* plaintiffs allege that this enabled Iran to increase the amount of support it provided to groups targeting U.S. service members in Iraq. *Compare* Compl. ¶¶ 164, 171, 174, 181 *with O'Sullivan I* Compl. ¶ 1402. And as here, the

---

[2] The *O'Sullivan* plaintiffs filed a second action to add new plaintiffs and a new claim. *O'Sullivan II* is currently stayed pending resolution of the fully briefed motion to dismiss filed in *O'Sullivan I*. *See* Stipulation & Order, *O'Sullivan v. Deutsche Bank AG*, No. 1:17-cv-08709-LTS-GWG (S.D.N.Y. Jan. 30, 2019), ECF No. 190.

*O'Sullivan* plaintiffs assert (1) primary liability claims under § 2333(a) and (2) an aiding-and-abetting claim under § 2333(d). *Compare* Compl. ¶¶ 268-321 *with O'Sullivan I* Compl. ¶¶ 2408-40, 2495-512; St-Jules Decl. Ex. D ¶¶ 2695-98, (Compl., *O'Sullivan v. Deutsche Bank AG*, No. 1:18-cv-12325-LTS-GWG (S.D.N.Y. Dec. 29, 2018), ECF No. 1 ("*O'Sullivan II* Compl.")).

A motion to dismiss has been fully briefed in *O'Sullivan I* since July 2, 2018. Discovery is currently stayed by an order of the magistrate judge, objections to which were overruled by the District Court, which found that the defendants had "made a strong showing that they are likely to succeed on their motion to dismiss with respect to liability under 18 U.S.C. § 2333," including the plaintiffs' claims of both primary and aiding-and-abetting liability. *O'Sullivan v. Deutsche Bank AG*, 17 Civ. 8709 (LTS) (GWG), 2018 WL 1989585, at *7 (S.D.N.Y. Apr. 26, 2018).

IV.  **No Similar Cases Are Pending Anywhere Except New York**

All of the pending related cases are in New York. Two similar actions were filed in the Southern District of Illinois, but none is pending; one was dismissed and the other was transferred to New York.

One of the cases was *Shaffer v. Deutsche Bank AG*, No. 3:16-cv-00497-MJR-SCW (S.D. Ill.), which asserted the same two primary liability claims that Plaintiffs assert here under 18 U.S.C. § 2333(a). *See* St-Jules Decl. Ex. E ¶¶ 239-74 (Compl., *Shaffer v. Deutsche Bank AG*, No. 3:16-cv-00497-MJR-SCW (S.D. Ill.

May 4, 2016), ECF No. 1).  Plaintiffs' Complaint is a near word-for-word copy of

*Shaffer*.[3]  The *Shaffer* complaint was dismissed by the Southern District of Illinois

for failure to state a claim, *see Shaffer v. Deutsche Bank AG*, No. 16-CR-497-MJR-

SCW, 2017 WL 8786497 (S.D. Ill. Dec. 7, 2017), and the Seventh Circuit recently

affirmed dismissal on three independent grounds, *see Kemper*, 911 F.3d 383.  The

Seventh Circuit held that the complaint failed to adequately allege three elements

required to state the asserted § 2333(a) primary liability claims: (1) Deutsche

Bank's alleged conduct did not meet the statutory elements for committing an "act

of international terrorism"; (2) Deutsche Bank did not proximately cause the

attacks in Iraq; and (3) the alleged facts did not support a claim that Deutsche Bank

joined a conspiracy to support terrorism.  *See id.* at 390, 394-96.

The second case is *Martinez v. Deutsche Bank AG*, No. 3:16-cv-01207-

DRH-DGW (S.D. Ill. Nov. 2, 2016).  That suit was brought against Deutsche Bank

and all of the same defendants in *Stephens*, based on the same core allegations.  18

of the 25 Plaintiffs in this action were plaintiffs in *Martinez*.  St-Jules Decl. Ex. F

(Compl., *Martinez v. Deutsche Bank AG*, No. 3:16-cv-01207-DRH-DGW (S.D. Ill.

Nov. 2, 2016) ("*Martinez* Compl.")).  The district court granted the defendants'

---

[3] Deutsche Bank did not seek to transfer the *Shaffer* action because (1) the *Shaffer* plaintiffs had not filed a parallel action in a different court seeking to hold other banks liable for the same injuries (unlike here), (2) the small number of *Shaffer* plaintiffs all resided in their chosen forum (unlike here), and (3) when *Shaffer* was filed, Deutsche Bank was not simultaneously litigating any other ATA action (unlike now).

motion to transfer the *Martinez* case to the Eastern District of New York.  *See*

*Martinez v. Deutsche Bank AG*, No. 16-1207-DRH, 2017 WL 1366048 (S.D. Ill.

Apr. 12, 2017).  Following that transfer and a motion to dismiss, the *Martinez*

plaintiffs voluntarily dismissed their action without prejudice.  Notice of Dismissal

& Order, *Martinez v. Deutsche Bank AG*, No. 1:17-cv-02474-NGG-RER

(E.D.N.Y. Oct. 5, 2017), ECF No. 130.[4]

## ARGUMENT

The Court should transfer this action to New York pursuant to 28 U.S.C.

§ 1404(a).  The factors courts consider in transferring actions weigh heavily in

favor of transfer, including the decisive fact that several cases raising the same

claims and issues are pending in New York, *including one brought by the exact*

*same Plaintiffs*, in a misbegotten attempt to split one case into two.  Venue is

proper in the Southern District of New York, so this case can readily be transferred

there.  Venue would not have been proper in the Eastern District of New York had

these plaintiffs sued Deutsche Bank as a sole defendant in that district, but

Defendants will consent to transfer to that district for purposes of this motion, as

---

[4] All of the Plaintiffs in the present case also assert that various pharmaceutical and
medical equipment companies are responsible for the same attacks at issue here, in
an ATA action pending in the District Court for the District of Columbia.  *See*
Second Am. Compl., *Atchley v. Astrazeneca UK Ltd.*, No. 1:17-cv-02136-RJL
(D.D.C. Dec. 31, 2018), ECF No. 100-1.

§ 1404(a) permits.  Given the logic of consolidating this action with *Stephens*,

Deutsche Bank invites Plaintiffs to do the same.

## I.     Transfer To New York, Which Plaintiffs Recognize Is A Convenient Forum for Their ATA Claims, Would Be in the Interest of Justice

A district court has "broad discretion" to transfer an action "[f]or the

convenience of parties and witnesses" and "in the interest of justice."  *See* 28

U.S.C. § 1404(a); *In re World Wide Med. Tech. LLC*, Nos. 4:11–cv–614/RS–CAS,

4:12cv170/RS-CAS, 2012 WL 1252423, at *1 (N.D. Fla. Apr. 13, 2012).  In

determining whether to transfer an action, courts engage in an "individualized,

case-by-case consideration of convenience and fairness . . . weigh[ing] in the

balance a number of case-specific factors."  *Stewart Org., Inc. v. Ricoh Corp.*, 487

U.S. 22, 29 (1988).  Factors relevant to a court's transfer analysis include:  "(1) the

convenience of the witnesses; (2) the location of relevant documents and the

relative ease of access to sources of proof; (3) the convenience of the parties; (4)

the locus of operative facts; (5) the availability of process to compel the attendance

of unwilling witnesses; (6) the relative means of the parties; (7) a forum's

familiarity with the governing law; (8) the weight accorded a plaintiff's choice of

forum; and (9) trial efficiency and the interests of justice, based on the totality of

the circumstances."  *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th

Cir. 2005).

All of these factors weigh heavily in favor of transfer, particularly because cases involving the same issues are already pending in the Eastern and Southern Districts of New York.  Transfer would advance the fundamental purpose of § 1404(a), which "was designed to prevent" "the wastefulness of time, energy and money" that arises where "two cases involving precisely the same issues are simultaneously pending in different District Courts."  *Cont'l Grain*, 364 U.S. at 26.

A. **The Interest of Justice Weighs Strongly in Favor of Transfer Based on the Highly Similar Cases Pending in New York and Deutsche Bank's Presence in New York**

In analyzing the trial efficiency and interest of justice factors, the existence of similar litigation in the transferee district can be dispositive.  *See Chicken Kitchen USA, LLC v. Tyson Foods, Inc.*, No. 17-21503-CIV-WILLIAMS, 2017 WL 6760811, at *3 & n.3 (S.D. Fla. Oct. 4, 2017) (transferring action to district where different plaintiffs had sued the defendants based on the same allegations, even where other factors did not weigh in favor of transfer); *Cain v. Twitter, Inc.*, 17 Civ. 122 (PAC), 2017 WL 1489220, at *3 (S.D.N.Y. Apr. 25, 2017) (noting, in the context of a successful motion to transfer an ATA case, that the existence of similar litigation in the transferee district can be "decisive").

As a result, courts routinely transfer actions to districts where similar litigation is pending, even where there is not a complete identity of parties.  This Court, for example, has transferred a case to a district where the same plaintiff was

12

already litigating an action with common questions of law and fact against a

different defendant.  *See Saleem v. Centurion of Florida., LLC*, No. 4:18cv473-

MW/CJK, 2018 WL 6046188, at *1 (N.D. Fla. Nov. 19, 2018) (Walker, C.J.)

(*adopting* Report & Recommendation, No. 4:18cv473-MW-CJK, 2018 WL

6048037, at *2 (N.D. Fla. Oct. 23, 2018)); *see also Hamel-Schwulst v. Negrotto*,

No. 308cv529/MCR/EMT, 2010 WL 548318, at *7 (N.D. Fla. Feb. 11, 2010)

(transferring case to district where plaintiff was litigating a nearly identical case

against some of the same defendants); *Amaya v. Victoria's Secret Stores, LLC*, No.

08-81367-Civ-RYSKAMP/VITUNAC, 2009 WL 10667492, at *6 (S.D. Fla. Aug.

3, 2009) (transferring case to district where different plaintiffs had brought

substantially similar actions); *Martin v. Scottrade, Inc.*, No.: 8:17–cv–1042 T–24

AAS, 2017 WL 6624136, at *5 (M.D. Fla. Dec. 28, 2017) (similar); *Hoffman v.

Medquist, Inc.*, No. 1:04-CV-3452-WSD, 2005 WL 3095713, at *2-3 (N.D. Ga.

Nov. 16, 2005) (similar; noting that "some courts have indicated" that the

"presence of related proceedings in the transferee court" "may be more important

than the three [factors] set out in Section 1404(a)"); *In re Vicor Corp.*, 493 F.

App'x 59, 61 (Fed. Cir. 2012) ("[T]he existence of multiple lawsuits involving the

same issues 'is a paramount consideration when determining whether a transfer is

in the interest of justice.'  Judicial economy may be served even when 'two related

cases before the same court may not involve the same defendants and accused

products.'" (citation omitted)); *cf. S. Mills, Inc. v. Nunes*, 586 F. App'x 702, 706 (11th Cir. 2014) (upholding decision not to retransfer action to Virginia based on existing action in Georgia with identical issues and overlapping parties; "[b]y declining to fragment a case about a single arbitration award into two suits, the district court avoided multiplicitous proceedings and potentially conflicting judgments").

Transfer is warranted here based on the existence of the indisputably similar cases in the Eastern District of New York (*Stephens*, among others) and the Southern District of New York (*O'Sullivan*).  All three cases seek to recover damages for attacks against U.S. service members who were serving in Iraq.  *See* Compl. ¶ 3; *Stephens* Compl. ¶¶ 7, 10; *O'Sullivan I* Compl. ¶¶ 2, 11.  All three cases assert claims against Western financial institutions for processing transactions on behalf of Iranian entities, including Bank Saderat, Bank Melli, and Iran's Central Bank, in a manner allegedly designed to evade U.S. sanctions.  *See* Compl. ¶¶ 1, 183, 195, 254, 267; *Stephens* Compl. ¶¶ 6, 58, 526-41 552-61; *O'Sullivan I* Compl. ¶ 3, 1324, 1422, 2069.  All three cases seek to tie these financial activities to attacks in Iraq.  *See* Compl. ¶¶ 1-2; *Stephens* Compl. ¶¶ 5-7; *O'Sullivan I* Compl. ¶¶ 3-4.  All three cases include either Plaintiffs or Deutsche Bank as parties.  *See generally* Compl.; *Stephens* Compl.; *O'Sullivan I* Compl. And all three cases assert claims under § 2333(a) for committing acts of

international terrorism, and under § 2333(d) for aiding and abetting acts of international terrorism. *See* Compl. ¶¶ 268-321; *Stephens* Compl. ¶¶ 1217-55, 1359-77; *O'Sullivan I* Compl. ¶ 2408-40, 2495-512; *O'Sullivan II* Compl. ¶¶ 2695-98.

The issues that will need to be decided in each action will thus be substantially duplicative at each stage. At the motion to dismiss stage, the defendants in the three actions have already asserted, or will assert, similar defenses. If the actions proceed to discovery, the parties will have to explore largely overlapping factual issues and may have to confront the same complex discovery questions. For example, because Deutsche Bank and other Western financial institutions entered into relevant settlements with bank regulators, production disputes may arise among the parties as well as government agencies regarding the application of the bank examination privilege and the prohibition on disclosure of confidential supervisory information.[5] If the actions proceed to trial, the plaintiffs will have to prove similar facts. The risk of duplication is even stronger in light of Plaintiffs' choice to split their claims between two separate courts, since the exact same facts about the attacks and injuries that would have to

---

[5] *See Raffa v. Wachovia Corp.*, 242 F. Supp. 2d 1223, 1225 (M.D. Fla. 2002) (bank examination privilege belongs to regulator and shields from discovery "agency opinions or recommendations"); N.Y. Banking Law § 36(10) (prohibiting disclosure of "reports of examinations and investigations, correspondence and memoranda concerning or arising out of such examination[s] and investigations"); 12 C.F.R. § 261.2(c)(1), § 261.22(e) (similar).

be proved in this case will also have to be proved in *Stephens*.  There is simply no reason to burden two courts with the task of simultaneously addressing the same claims raising the same issues.

The Court need look no further than Plaintiffs' own actions to conclude that efficiency interests are at stake here.  Just a few weeks ago, Plaintiffs stipulated that the *Stephens* action should be stayed "in the interest of efficiency and judicial economy" in light of a pending motion to dismiss in the related *Freeman I* case. *See* St-Jules Decl. Ex. B (Stipulation & Order, *Stephens v. HSBC Holdings PLC*, No. 1:18-cv-07439-RJD-CLP (E.D.N.Y. Feb. 13, 2019), ECF No. 7).  They plainly cannot dispute that their attempt to split one case into two contravenes the same "interests of efficiency and judicial economy."

Moreover, the interest of justice factor weighs even further in favor of transfer here because New York courts have a substantial interest in adjudicating Plaintiffs' claims based on Deutsche Bank's operation of a branch in New York with 687 employees.  *See* Declaration of Bernadette Whitaker ("Whitaker Decl.") ¶ 4; *see, e.g.*, *Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1229 (S.D. Fla. 2016) ("[T]he California District has a substantial interest in adjudicating controversies involving a corporation employing hundreds of California residents."); *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1278 (S.D. Fla. 2011) ("This Court finds that due to the extent of

Microsoft's presence in the Western District of Washington, the local interest in this case would be higher there than in this District."); *see also Amaya*, 2009 WL 10667492, at *5 (finding transferee district had "a unique and compelling interest in adjudicating disputes involving" defendant companies that were headquartered in the transferee district, even where plaintiffs were Florida residents).

### B.   This Case Has Strong Ties to New York but Only Minimal Ties to Florida

This case's lack of any meaningful connection to Florida on the one hand, and strong connections to New York on the other, also strongly supports transfer. Based on the highly uneven nature of these connections, the following factors all weigh heavily in favor of transfer:  (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; and (5) the availability of process to compel the attendance of unwilling witnesses.

**Convenience of the parties**.  The only connection Plaintiffs' complaint has to Florida is that four out of the 23 individual Plaintiffs reside somewhere in the state.[6]  *See* Compl. ¶¶ 34, 43-45.  But the majority of Plaintiffs are scattered across

---

[6] Plaintiffs do not specify whether any of these four Plaintiffs resides in the Northern District of Florida.  *See* Compl. ¶¶ 34, 43-45.

(continued…)

the country,[7] and there is no reason to conclude that it would be more convenient

for all Plaintiffs to litigate this action here.  *See Martinez* 2017 WL 1366048, at *4

(rejecting plaintiffs' argument that litigating an ATA action similar to the present

one in the Southern District of Illinois would be more convenient where plaintiffs

were citizens of many states, even though three plaintiffs resided in Illinois).  In

fact, Plaintiffs have shown that it would not be inconvenient for them to litigate in

New York, because they *filed a virtually identical action in New York*.  Further,

transfer to the Eastern District of New York would be especially convenient for

Plaintiffs as their two actions could be consolidated, thus avoiding duplicative

litigation.  If this case were to go to trial, the question is not whether it would be

more convenient for particular plaintiffs or witnesses to travel to Florida *or* New

York, but whether they would have to travel to Florida *in addition to* New York.

By contrast, it would be inconvenient for Deutsche Bank to defend this

action here.  Deutsche Bank maintains a branch in the Southern District of New

---

[7] Four Plaintiffs reside in Idaho, Compl. ¶¶ 16-18, 21; two reside in California, *id.*
¶¶ 19-20; two reside in Tennessee, *id.* ¶¶ 29-30; four reside in Georgia, *id.* ¶¶ 31-33, 35; two reside in Virginia, *id.* ¶¶ 46, 59; one resides in Washington, D.C., *id.*
¶ 47; and four reside in North Carolina, *id.* ¶¶ 55-58.

(continued…)

York,[8] in close proximity to the Eastern District of New York,[9] and is already defending a related action in the Southern District of New York.  The balance of conveniences for the parties thus weighs in favor of transfer.

**Convenience of the witnesses, availability of process to compel witness attendance, location of operative facts, and ease of access to sources of proof.** Apart from the four (out of 23) Plaintiffs that reside in Florida, there are no allegations that suggest any witnesses or sources of evidence are located in the Northern District of Florida.  Conversely, Plaintiffs allege that Deutsche Bank's New York branch was involved in processing the challenged transactions, *see* Compl. ¶ 74, suggesting employees at Deutsche Bank's New York branch may be relevant witnesses.  Moreover, to the extent that overseas Deutsche Bank employees will be called to testify in this action, the Southern and Eastern Districts of New York provide a more convenient forum because (1) Deutsche Bank has a

---

[8] Deutsche Bank does not maintain a foreign bank branch anywhere else in the United States, and neither Deutsche Bank nor any of its subsidiaries have offices in the Northern District of Florida.  Whitaker Decl. ¶¶ 4, 6.  Since September 2014, Deutsche Bank has been authorized to operate an international administrative office in Florida, *id.* ¶ 6, but Plaintiffs do not allege that this office has any connection to this action.  Nor could they as the office's existence postdates the time period for which they seek to hold Deutsche Bank liable (through 2011), *see* Compl. ¶ 3, and the office does not conduct cash clearing activities, Whitaker Decl. ¶ 6.  Further, certain Deutsche Bank subsidiaries, excluding DBTCA, have offices outside of the Northern District of Florida, in Jacksonville and Miami, *id.* ¶ 6, but Plaintiffs have not alleged that any of these subsidiaries are in any way connected to this action.

[9] The Southern District of New York courthouses in Manhattan are approximately two miles from the Eastern District of New York courthouse in Brooklyn.  *See* St-Jules Decl. ¶ 11.

branch in the Southern District of New York, in close proximity to the Eastern

District of New York, but no offices in the Northern District of Florida, *see*

Whitaker Decl. ¶¶ 4, 6, and (2) there are three airports in close proximity, two of

which have many direct flights to and from Frankfurt, where Deutsche Bank is

headquartered, *see* Whitaker Decl. ¶ 3; St-Jules Decl. ¶¶ 8-9. *See In re World*

*Wide Med. Tech. LLC*, 2012 WL 1252423, at *2 (considering the relative difficulty

and cost of flying to Panama City, Florida versus Chicago); *Thermal Techs., Inc. v.*

*Dade Servs. Corp.*, 282 F. Supp. 2d 1373, 1376 (S.D. Fla. 2003) (considering

distance from defendant's principal place of business relative to the court and the

transferee court).

The court must also take into consideration the convenience of non-party

witnesses and whether witnesses will be subject to compulsory process. Plaintiffs

allege that Deutsche Bank's non-party subsidiary, DBTCA, was involved in the

processing of relevant transactions. Compl. ¶¶ 73-74, 232-33. DBTCA employees

are overwhelmingly located in the New York. *See* Whitaker Decl. ¶¶ 5, 6.

Moreover, given the age of Plaintiffs' allegations (dating back to 1999, *see* Compl.

¶¶ 1, 169, 205), relevant witnesses from Deutsche Bank's New York Branch may

no longer be employed by Deutsche Bank. The convenience of non-party

witnesses and the availability of compulsory process both weigh in favor of

transfer.

Finally, the court must consider the locus of operative facts.  Plaintiffs'
Complaint includes no allegations suggesting any operative facts occurred in
Florida.  Instead, Plaintiffs' allegations of U.S.-based activity center on New York,
through which the relevant transactions were purportedly routed in a manner
designed to conceal the transactions from U.S. regulators and law enforcement
agencies.  *See* Compl. ¶¶ 74, 145, 178, 232-33.  The locus of operative facts factor
consequently favors transfer.  *See Jones Real Estate, Inc. v Avatel Techs., Inc.*, No.
17-23933-CIV-O'SULLIVAN, 2018 WL 1121537, at *3 (S.D. Fla. Mar. 1, 2018)
(locus of operative facts factor favored transfer where locus was not in the
Southern District of Florida); *Martin*, 2017 WL 6624136, at *6 ("significant
connections between a particular venue and the events that gave rise to a suit"
weigh in favor of transfer).

## C.    Plaintiffs' Choice of Venue Should Be Afforded No Deference

Ordinarily, Plaintiffs are owed some level of deference to their choice of
forum.  But this is not an ordinary case.  As an initial matter, where, as here, "there
is no material connection between the forum and the events underlying the cause of
action," "[t]hat choice is not entitled to the weight it is generally accorded."
*Martinez v. Shulkin*, No. 1:17cv128-MW/CAS, 2017 WL 10821303, at *1 (N.D.
Fla. Aug. 2, 2017) (Walker, C.J.); *see also Motorola Mobility, Inc.*, 804 F. Supp.
2d at 1276 ("[W]here the operative facts underlying the cause of action did not

occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration.").

More importantly, Plaintiffs' choice of forum should be given no weight in light of their decision to file the substantially similar *Stephens* action in New York. Indeed, Plaintiffs have selected New York as their forum of choice to litigate essentially the same case; they have just broken off one defendant into a separate case. The only plausible explanation for this decision is a tactic by Plaintiffs' counsel to take two separate bites at the apple, with the hope that at least one of their two chosen forums proves favorable. This apparent forum shopping is further evidenced by the fact that 18 of the 25 Plaintiffs all brought a similar action in the Southern District of Illinois, but then voluntarily dismissed that action after it was transferred to the Eastern District of New York. *See Martinez*, 2017 WL 1366048; Notice of Dismissal & Order, *Martinez v. Deutsche Bank AG*, No. 1:17-cv-02474-NGG-RER (S.D. Ill. Oct. 5, 2017), ECF No. 130.

Courts have found that such facts vitiate the deference that might otherwise be given to a plaintiff's choice of forum. For example, in *Cain v. Twitter, Inc.*, another ATA case, the plaintiffs sought to hold technology companies responsible for ISIS terrorist attacks. 2017 WL 1489220. Like Plaintiffs here, the *Cain* plaintiffs split their case in two, suing Twitter in the Southern District of New York and Google in the Northern District of California. *Id.* at *2. The New York court

granted Twitter's motion to transfer, refusing to "allow plaintiffs to litigate the same claims in a piecemeal fashion against multiple defendants" in different districts. *Id.* at *4. To do otherwise, the Court explained, would "endorse a result that could promote forum shopping and result in substantial waste of judicial resources." *Id.* Precisely the same reasons support transfer here.[10]

In any event, even if Plaintiffs' choice of forum were entitled to some deference, the choice of forum factor is still "not a more important factor than the presence of related proceedings in the transferee district." *Martin v. South Carolina Bank*, 811 F. Supp. 679, 686 (M.D. Ga. 1992). As explained above, that factor points decisively toward transfer.

## II. Venue Is Proper in New York

Pursuant to 28 U.S.C. § 1404(a), the Court "may transfer any civil action to any other district . . . where it may have been brought or to any district . . . to

---

[10] *See Clifton v. Florida Bow Thrusters, Inc.*, No. 5:10–cv–8/RS/EMT, 2010 WL 11507724, at *2 (N.D. Fla. Mar. 17, 2010) (noting that the plaintiff's connections to the district were transitory, "rais[ing] the suspicion of forum shopping, a practice long disfavored by federal courts"); *Thermal Techs.*, 282 F. Supp. 2d at 1379 ("[W]hen a plaintiff's choice of forum was motivated by a forum shopping reason . . . that plaintiff's choice of forum would be entitled to much less deference." (*citing Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc)); *Southards v. ConAgra Foods, Inc.*, No. C 07-05355 JF, 2008 WL 108899, at *1 (N.D. Cal. Jan. 8, 2008) ("[T]he Court may disregard the plaintiff's choice of forum where the plaintiff's suit is the result of forum-shopping." (*citing Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)); *Deep v. XAC, LLC*, No. 07-8-C, 2007 WL 1308356, at *3-4 (W.D. Ky. May 2, 2007) (holding that plaintiff's conduct suggesting forum shopping "militate[d] in favor of transfer" and that plaintiff's choice of forum warranted no deference where plaintiff initially filed suit in the Northern District of New York, then dismissed the action and filed in the Western District of Kentucky).

which all parties have consented." Under the ATA, venue is proper if any single plaintiff or defendant resides or has an agent in the district. *See* 18 U.S.C. § 2334(a) (venue is proper under the ATA where "any plaintiff resides or where any defendant resides or is served, or has an agent")

Because Deutsche Bank operates a branch in the Southern District of New York, *see* Whitaker Decl. ¶ 4; Compl. ¶ 72, it has an agent in the district for purposes of the ATA. *See Wultz v. Islamic Republic of Iran*, 762 F. Supp. 2d 18, 32 (D.D.C. 2011) ("[B]ecause [Bank of China, Ltd.] operates a branch in New York, it both 'resides' and 'has an agent' in the forum, and thus any suit against it may be properly venued under the ATA."). Venue is thus proper in the Southern District of New York for this action. *See* 18 U.S.C. § 2334(a).

The most logical transferee district for this action is the Eastern District of New York, where the case that Plaintiffs have artificially divided can be consolidated into one. And in light of the ATA's venue provision, Plaintiffs could properly have joined Deutsche Bank as an additional defendant in the *Stephens* case. *See* 18 U.S.C. § 2334(a) (venue under the ATA can be based on a single plaintiff or defendant). However, because none of the parties to this action resides in or has an agent in the Eastern District of New York, venue in that district would not have been proper in a case suing Deutsche Bank alone.

24

Thus, to facilitate transfer to the most logical venue, and as § 1404 specifically contemplates, for purposes of this motion Deutsche Bank will consent to transfer this action to the Eastern District of New York.  Deutsche Bank invites Plaintiffs to do the same, in order to achieve the most logical and efficient result. *See* 28 U.S.C. § 1404(a) (transfer appropriate to district "to which all parties have consented"); *see, e.g.*, *Cozumel Leasing, LLC v. Int'l Jets, Inc.*, No. 5:10–cv–8/RS/EMT, 2016 WL 397615, at *1 (M.D. Fla. Feb. 2, 2016) (granting motion to transfer to consented-to district).  But if Plaintiffs for some reason refuse to consent to transfer to the Eastern District of New York where they already have a case pending, the Court should transfer this action to the Southern District of New York, where the case could be consolidated with *O'Sullivan*.  This would also be an efficient and appropriate forum – and importantly, would not "endorse a result that could promote forum shopping and result in substantial waste of judicial resources." *Cain*, 2017 WL 1489220, at *4.

## CONCLUSION

For the foregoing reasons, Deutsche Bank requests that the Court transfer this action to the Eastern District of New York if Plaintiffs will consent to that forum, or in the alternative to the Southern District of New York.

25

DATED:  March 8, 2019                    Respectfully submitted,

                                         *s/Lorence Jon Bielby*
                                         Lorence Jon Bielby
                                         Florida Bar No. 393517
                                         **GREENBERG TRAURIG, P.A.**
                                         101 East College Avenue
                                         Post Office Drawer 1838
                                         Tallahassee, FL 32301
                                         (850) 222-6891 Phone
                                         (850) 681-0207 Fax
                                         BielbyL@gtlaw.com
                                         HoffmanM@gtlaw.com
                                         FLService@gtlaw.com

                                         John E. Hall (*pro hac vice forthcoming*)
                                         Mark P. Gimbel (*pro hac vice forthcoming*)
                                         Laena St-Jules (*pro hac vice forthcoming*)
                                         **COVINGTON & BURLING LLP**
                                         The New York Times Building
                                         620 Eighth Avenue
                                         New York, New York 10018
                                         (212) 841-1000 Phone
                                         (212) 841-1010 Fax
                                         jhall@cov.com
                                         mgimbel@cov.com
                                         lstjules@cov.com

                                         David M. Zionts (*pro hac vice
                                         forthcoming*)
                                         **COVINGTON & BURLING LLP**
                                         One CityCenter
                                         850 Tenth St., NW
                                         Washington, DC 20001
                                         (202) 662-6000 Phone
                                         (202) 662-6291 Fax
                                         dzionts@cov.com

                                         *Attorneys for Defendant Deutsche Bank AG*

26

## LOCAL RULE 7.1(C) CERTIFICATION

Pursuant to Local Rule 7.1(B), counsel for movant conferred orally with Plaintiffs' counsel in good faith regarding the issues raised in this motion, but the parties were unable to resolve the issues.

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), I certify that the foregoing memorandum of law contains 6,301 words, excluding the portions of the memorandum of law exempted by Local Rule 7.1(F).

*s/Lorence Jon Bielby*
**LORENCE JON BIELBY**